# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VICTOR MANUEL A. PALMA**<br>3815 El Cerrito Place<br>Alexandria, VA 22309<br><br>**SANDRA ZELAYA**<br>298 South Whiting Street, Apt. U 23<br>Alexandria, VA 22304<br><br>     **Plaintiffs,**<br><br>          v.<br><br>**JANITORIAL PARTNERS, INC. d/b/a/**<br>**APARTMENT CLEANERS**<br>5645-P General Washington Drive<br>Alexandria, Virginia 22312<br><br>**RAY PARK**<br>5253 Monroe Drive<br>Springfield, Virginia 22151<br><br>     **Defendants.** | Case No. |

Plaintiffs Victor Palma, ("Mr. Palma"), and Sandra Zelaya, ("Ms. Zelaya"), through counsel for this Complaint, hereby allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring action against Defendants Janitorial Partners, Inc., and Ray Park, (collectively, "Defendants"), to redress violations of federal and District of Columbia law that occurred during the course of Mr. Palma and Ms. Zelaya's employment with Defendants. By their actions and omissions alleged herein, Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); the D.C. Minimum Wage Law, D.C. Code Ann. §§ 32-1001 *et seq.* ("DCMWL"); the D.C. Payment and Collection of Wages Law, D.C. Code Ann. §§ 32-1301 *et seq.* ("DCPCWL"); and the regulations promulgated thereto, D.C. Mun. Regs. tit. 7, §§

900 *et seq.* Plaintiffs seek back pay in the form of wages and/or overtime wages for labor and services rendered on Defendants' behalf, liquidated damages, attorneys' fees, costs, and expenses, and any other legal or equitable relief that the Court deems proper to redress Defendants' unlawful actions.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Count I pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Counts I and II, which arise under District of Columbia law, pursuant to 28 U.S.C. § 1367(a) because these claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

4. This Court has personal jurisdiction over Defendants because Defendants have substantial, continuous, and systematic contacts with the District of Columbia and a substantial part of the actions and omissions alleged herein occurred in the District of Columbia.

5. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(b) because a substantial part of Defendants' actions and omissions giving rise to the claims asserted herein occurred in this district.

## THE PARTIES

### Plaintiffs

6. Plaintiffs Victor Palma and Sandra Zelaya reside in Alexandria, Virginia. They worked for Defendants throughout the Washington, D.C. metropolitan area.

### Defendants

7. Defendant Janitorial Partners, Inc., d/b/a Apartment Cleaners, ("JPI") is a Virginia corporation with its principal place of business in Alexandria, Virginia. Upon

information and belief, JPI provides janitorial services in residential apartment and condominium buildings in the District of Columbia and throughout the District of Columbia metropolitan area.

8. JPI is an enterprise engaged in interstate commerce. Upon information and belief, JPI has annual business volume in excess of $500,000.

9. Defendant Ray Park is the President and Chief Operating Officer of JPI, and at all relevant times was an owner, agent, and/or principal of JPI with both the actual and apparent authority to bind and set wage and hour policies and practices for JPI.

## FACTUAL ALLEGATIONS

### Factual Allegations Common to All Claims

10. Defendant JPI is in the business of providing janitorial services to residential apartment and condominium buildings in the D.C. metropolitan area.

11. Defendants managed Plaintiffs, and controlled the terms and conditions of their employment. Throughout the time period in question, Defendants had and exercised the power to control Plaintiffs' work schedules and locations, to assign their job tasks and direct the means of carrying them out, to provide them the instruments and materials to perform the work, to supervise and evaluate their job performance, and to hire and/or fire Plaintiffs.

12. Defendants misclassified Plaintiffs as supervisors to avoid paying their hours worked and overtime wages.

13. Defendant Ray Park, on behalf of Defendant JPI, authorized, assented to, or were aware of the work performed by Plaintiffs for the benefit of Defendants.

14. Defendant Ray Park has decision-making authority over JPI's payroll and employment policies and practices, including, but not limited to, the employees' rate of pay, overtime hours, pay dates, method of payment, the maintenance of employee records, authority to hire and fire employees, and the assignment of employees to JPI worksites.

15. At all relevant times, Plaintiffs were paid on a salary basis. These payments, however, did not reflect the actual hours worked by Plaintiffs because Defendants did not keep accurate time records and/or refused to include compensable time such as preliminary and post work duties and travel time between worksites.

16. Under this payment scheme, Defendants paid Plaintiffs a flat rate for each two-week pay period even in instances when the worked in excess of forty hours. Defendants subtracted payment from the Plaintiffs, however, when they worked fewer hours or days than originally scheduled. When emergency janitorial work was necessary, Defendants would assign it to these "salaried" employees to avoid paying employees who were compensated on an hourly basis.

17. At all relevant times, Plaintiffs were "non-exempt" employees for purposes of the FLSA and/or the DCMWL.

18. Throughout their employ, Defendants had and have a legal obligation to pay Plaintiffs for all work performed and to pay overtime compensation for hours in excess of forty hours each week. Throughout their employ, Defendants also had and have a legal obligation to pay for maintenance and cleaning of their uniforms.

19. Despite Defendants' obligations under relevant wage and hour laws and regulations, Defendants intentionally created and implemented a system by which they denied Plaintiffs all wages owed for each hour worked and one-and-one-half times their regular hourly rate of pay for hours worked in excess of forty hours during each workweek, and denied Plaintiffs payment for cleaning and maintenance of uniforms.

20. Plaintiffs were not paid all earned compensation owed them for hours worked during their employ.

21.     Throughout Plaintiff's employment, Defendants issued pay stubs to Plaintiffs that failed to include, *inter alia*, a statement of the hours worked during the pay period, a statement of gross wages paid separately listing the earnings for overtime and non-overtime hours worked, and an itemization of allowances and deductions from and additions to wages.

22.     For any pay period in which the hours of Plaintiffs exceeded 80, rather than pay overtime, Defendants simply omitted any statement of the hours worked from the employees' paystubs.

23.     Upon information and belief, Defendants failed to keep payroll records containing all information required by law.

24.     The compensation policies and practices set forth above constitute willful, knowing, and intentional violations of the FLSA, the DCMWL, the DCPCWL, and the regulations promulgated thereto.

**Factual Allegations Specific to JPI's Cleaning Division**

25.     JPI has a cleaning division that provides janitorial services inside individual apartments while the apartments are vacant in between tenancies (the "Cleaning Division").  On information, the Cleaning Division operates under Apartment Cleaners.

26.     Cleaning Division employees worked in teams of four.  Each team provides janitorial services at multiple buildings in the District of Columbia, Virginia, and/or Maryland on each workday.

27.     Each team includes a "Crew Supervisor."  Plaintiffs were Crew Supervisors. The Crew Supervisors performed the same janitorial duties alongside the other Cleaning Division employees.

28. In addition, the Crew Supervisors arrive at the JPI office at around 6:30 a.m. and gather all of the cleaning materials and equipment to be used during the workday and load the company trucks with the cleaning materials and equipment.

29. Each Crew Supervisor served as the driver for his or her assigned team. The Crew Supervisors use JPI-owned vehicles to pick up and drop off the other members of their teams from their homes at the beginning and end of each workday and provide transportation between the worksites during each workday.

30. On information and belief, the Crew Supervisors also report the daily hours worked by each team to JPI Operations Manager Elvis Condezo. The Crew Supervisors do not have discretion in reporting the hours worked. Instead, pursuant to Defendants' policies, they are required to report the number of daily hours worked by the team excluding travel time between worksites.

31. If, upon receiving a Crew Supervisor's report of the hours worked by a team, Elvis Condezo believed that the team has worked too many hours in a given workday, Mr. Condezo did not include the additional hours in the calculation of wages.

32. Plaintiffs kept timesheets reflecting all hours worked by the team members.

33. At the end of each workday, each Crew Supervisor submitted to General Manager Franklin Condezo a record of the hours worked by each team.

34. On information and belief, throughout their employment, all Cleaning Division employees regularly worked and/or continue to work more than forty hours in a workweek.

35. During each workday, the Crew Supervisors would arrive at the JPI office around 6:30 a.m. to prepare the cleaning materials and equipment and load the company trucks.

The Crew Supervisors would also receive a list of apartments assigned to their team for cleaning. The Crew Supervisors would then pick up each team member at his/her home between 7 a.m. and 8 a.m. and drive the Cleaning Division members to the first worksite.

36. The Crew Supervisors would then drive the Cleaning Division members from worksite to worksite during the course of the day. Neither Plaintiffs nor the Cleaning Division members were provided with any breaks, except for the travel time between worksites, and were expected to eat their meals in the vans while traveling.

37. At the end of each workday, the Crew Supervisors would drop the Cleaning Division members off at their homes between 6 p.m. and 8 p.m. in the winter and between 8 p.m. and 10 p.m. in the summer. Accordingly, the Cleaning Division members worked between 10 and 16 hours each workday. Plaintiffs then had to return to JPI's Office and unload and store the cleaning equipment. Accordingly, Plaintiffs worked between 12 and 18 hours each workday.

38. The Cleaning Division members and all other Cleaning Division employees regularly worked more than 40 hours in a workweek.

39. In a meeting of all Cleaning Division employees in or around November 2010, Nolvia Ramirez Solano, a Cleaning Division employee, asked Franklin Condezo whether Cleaning Division employees should receive additional pay for their overtime hours. Mr. Condezo informed Ms. Ramirez Solano that Defendants do not pay overtime and that, if she did not like this fact, she could quit.

40. For the entirety of their tenure as employees of Defendants, Defendants failed to pay Plaintiffs overtime for their hours worked in excess of forty hours each work week and, depending on the number of hours worked each week, often failed to pay the federal minimum wage.

41. On information and belief, Defendants knew that the payments they made to the Plaintiffs did not meet the legal requirements under federal law.  Defendants therefore showed a willful disregard of their legal obligations toward the Plaintiffs.

42. On information and belief, Defendants failed to pay all Cleaning Division employees the minimum wage mandated by District of Columbia and/or Federal law, failed to pay Cleaning Division employees based in the District of Columbia an additional $0.10 per hour to maintain and clean the uniforms provided to them by JPI, and never paid the Cleaning Division employees overtime for their hours worked over forty hours each workweek.

## EQUITABLE TOLLING

43. Throughout their employment, Defendants failed to comply with the FLSA and the DCMWL by failing to post notices advising their employees of their rights to minimum wages and overtime pay in a conspicuous and accessible place in every establishment where such employees are employed so as to permit them to observe readily a copy.

44. As a result, any statutes of limitations applicable to Plaintiffs' claims are equitably tolled for the period that Defendants were in violation of their posting obligations.

45. Furthermore, equitable tolling is available to toll the statutory period when Plaintiffs can show that "that [they have] been pursuing [their] rights diligently" and "that some extraordinary circumstance stood in [their] way." *Ayala v. Tito Contractors*, Inc., 82 F.Supp.3d 279, 289 (D.D.C. 2015) (citing *Holland v. Florida,* 560 U.S. 631, 649 (2010)).

46. On April 1, 2013 Plaintiffs signed affidavits of consent to opt-into an action to vindicate their rights under the FLSA and DCMWL that was filed on March 27, 2013.

47. On April 1, 2014 a default judgment was entered in that case awarding Mr. Palma and Ms. Zelaya wages and liquidated damages in relation to the claims they seek redress for herein.

48. On September 9, 2015 that default judgment was vacated as to Mr. Palma and Ms. Zelaya leading to the filing of the instant complaint.

49. Therefore, since Plaintiffs have been diligently seeking to pursue their rights under the FLSA and DCMWL and the vindication of those rights has been hindered by an extraordinary circumstance, equitable tolling operates to toll the statutory period for Plaintiffs' claims allowing them to file the present complaint.

## COUNT I

### (Violation of the FLSA)

50. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

51. Plaintiffs are or were employed by Defendants to perform manual labor and/or other duties that do not satisfy the tests for exempt positions under the FLSA.

52. In violation of 29 U.S.C. § 206(a), Defendants failed and refused to pay Plaintiffs the applicable minimum wage for each hour worked.

53. Plaintiffs each worked more than forty hours in one or more workweeks within their employment with JPI.

54. In violation of 29 U.S.C. § 207(a), Defendants failed and refused to pay Plaintiffs for overtime at a rate of at least one-and-one-half times the employees' regular rate of pay for hours over forty worked in any given workweek.

55. Defendants' violations of the FLSA were repeated, willful, and intentional.

56. Plaintiffs have been damaged by said violations of the FLSA.

57. For their violation of the FLSA, Defendants are liable to Plaintiffs for all unpaid minimum wage and overtime compensation, plus an additional amount as liquidated damages, and costs and reasonable attorneys' fees incurred in the maintenance of this action.

## COUNT II

**(Violation of the D.C. Minimum Wage Law)**

58. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

59. Defendants failed and refused to pay Plaintiffs the required D.C. minimum wage for each hour worked, in violation of Section 32-1003(a)(2) of the DCMWL.

60. Defendants failed and refused to pay Plaintiffs one-and-one-half times their regular rate of pay for all hours worked in excess of forty each week, in violation of Section 32-1003(c) of the DCMWL.

61. Defendants failed to pay Plaintiffs an additional $0.10 per hour in addition to the wages required by the DCMWL for cleaning and maintenance of employer-provided uniforms, in violation of D.C. Mun. Regs. tit. 7, § 908.

62. Defendants' violations of the DCMWL and regulations promulgated thereto were repeated, willful, and intentional.

63. Defendants are liable to Plaintiffs under D.C. Code Ann. § 32-1012(a) and (c), for their unpaid uniform cleaning and maintenance compensation, unpaid minimum wage and overtime compensation, liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT III

**(Violation of the D.C. Payment and Collection of Wages Law)**

64. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

65. Defendants failed and refused to pay Plaintiffs their earned straight and overtime wages in violation of the DCPCWL, Section 32-1301, *et seq.*

66. To this day, Plaintiffs have not been paid their full earned straight and overtime wages.

67. Defendants' violations of the DCPCWL were and are repeated, willful, and intentional.

68. Defendants are liable to Plaintiffs under D.C. Code Ann. § 32-1308, for their unpaid wages, liquidated damages, interest, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Determine the damages sustained by Plaintiffs during their employment by JPI as a result of Defendants' willful and intentional violations of 29 U.S.C. § 207(a), and award unpaid minimum wages and overtime against Defendants in favor of Plaintiffs, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b), plus such pre-judgment interest as may be allowed by law;

B. Determine the damages sustained by Plaintiffs during their employment with JPI as a result of Defendants' willful and intentional violations of the DCMWL, the

      DCPCWL, and the regulations promulgated thereto, and award all appropriate damages resulting therefrom to Plaintiffs;

C.    Award Plaintiffs their costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees, accountants' fees, investigators' fees, experts' fees, and other associated costs; and

D.    Grant Plaintiffs such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial on all the issues so triable.

Dated: September 16, 2015

                              Respectfully submitted,

                              /s/ Denise M. Clark
                              DENISE M. CLARK (420480)
                              1250 Connecticut Ave., N.W., Ste. 200
                              Washington, D.C. 20036
                              P: (202) 293-0015
                              F: (202) 293-0115
                              dmclark@benefitcounsel.com

                              *Counsel for Plaintiffs*